[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION IN CONSOLIDATED ACTIONS
The controversies embraced in this combined litigation arise CT Page 13693 from alleged defalcations in a commercial transaction wherein one corporation purchased the assets of another. Specifically, by asset purchase agreement, dated January 5, 1994, Mukon Enterprises, Inc. (hereafter Mukon) consented to buy the assets of the Duro Engineering Company (hereafter Duro) for the sum of $150,000. The parties agreed that Mukon would pay $48,750 at the closing on January 5, 1994, and that the balance would be paid pursuant to a promissory note on four subsequent anniversary dates of the sale, namely: January 5 of 1996, January 5 of 1997, January 5 of 1998 and on January 5, 1999.
The Duro Engineering Company is engaged in the business of manufacturing rod holders for welding purposes. At the time of the purchase it was owned entirely by Joan Jenkins, Josephine Leonard, Harmon Leonard, Richard Buswell and Henry Toepke.
The case of Mukon Enterprises, Inc. v. Duro EngineeringCompany, Joan C. Jenkins, Josephine Leonard and Harmon Leonard, (hereafter Duro) was commenced in November of 1997. In the first count of its Second Amended Revised Complaint plaintiff Mukon alleges that Duro breached provisions of the asset purchase agreement by 1) not disclosing its liability for an unemployment compensation claim, 2) not disclosing its contractual liabilities to third parties, and 3) misrepresenting the ownership of certain dies. The plaintiff alleges further that these breaches also contravene the covenant of good faith and fair dealing implicating the agreement.
In a second count plaintiff Mukon alleges that Duro breached the asset purchase agreement further by disallowing certain set-offs. Specifically, plaintiff Mukon alleges that in an Installment Note, executed contemporaneously with the Asset Purchase Agreement, and setting out the payment terms of the sale, permits the buyer to set-off and withhold from any amounts under the Installment Note all amounts and claims arising from the direct or indirect breach of the Asset Purchase Agreement. In a third count plaintiff Mukon states that there is a bona fide dispute between the parties as to whether set-offs to the installment note should be allowed, and as to what obligations, if any, remain due and owing. In its request for relief plaintiff Mukon seeks damages under the first count. The plaintiff also seeks expenses, indemnity, reasonable attorneys' fees and a judgment declaring the rights and obligations of the parties under the installment note. CT Page 13694
In its Answer defendant Duro admits the execution of the asset purchase agreement but denies the essential allegations of the complaint. Defendant Duro has included in his Answer several special defenses, including estoppel, res judicata, and the statute of limitations.
Duro Engineering Company, Joan Jenkins, Josephine Leonard, Harmon Leonard and Richard Buswell have brought an action against Mukon. In the action, filed on January 30, 1998, these plaintiffs allege that defendant Mukon has filed to pay the balance of the asset purchase price due under the installment note. In its Answer defendant Mukon denies the essential allegations of the complaint. Furthermore, defendant Mukon by special defenses asserts that no money is due under the installment note for the reasons that 1) the Duro plaintiffs breached the asset purchase agreement, 2) the Duro plaintiffs misrepresented the assets and liabilities of Duro at the time of the sale, and 3) the amounts due and owing as alleged have been paid by crediting sums due the defendant under the terms of the installment note and asset purchase agreement.
The aforesaid actions were consolidated for trial. The evidence presented during the trial is discussed by this court in relation to the findings herein.
Duro was in the business of making and selling electrode holders utilized in arc welding. On or about January 5, 1994, Mukon, as buyer, signed an Asset Purchase Agreement with Duro, Joan Jenkins, Josephine Leonard, Harmon Leonard, Richard Buswell, and Henry Toepke, as seller, to purchase the assets of the Duro Engineering Company. The purchase price of $150,000, was to be paid as follows: $48,750 at the closing, and the $101,250 balance financed and payable in annual installments due on the anniversary date of the closing. It is undisputed that Mukon paid the amount due at the closing, as well as the first and second installment of $29,219.89, the third and fourth payment of $29,219.89 have not been paid.
It is stipulated that if Mukon is not entitled to its claimed set-offs against the note the amount of the outstanding principal balance would be $53,571.53; that the interest as of May 5, 1999 would be $10,714.31; and that the per diem due would be $8.92 for days after May 5, 1999.
I. As to Claim of Failure to Disclosed Liability as to ThirdCT Page 13695Persons
During the trial Mukon proved that Duro did not disclose an outstanding purchase order in the amount of $15,411.69 to a company known as NVF. Although the purchase order was canceled, an outstanding indebtedness resulting therefrom remained on the day of the closing. After the closing NVF sued Mukon in an effort to collect this indebtedness. Mukon then settled the lawsuit by paying NVF $5,000. Mukon paid its attorney $1,745.72 for representation in settling this litigation. Mukon claims that the non-disclosure of this outstanding order violates the Asset Purchase Agreement.
Section 3.01(d) of the Asset Management Agreement, Liabilities, captioned "Absence of Undisclosed Liabilities," states in material part that the "[s]eller does not have any indebtedness, liabilities or obligations whether accrued, absolute, contingent, liquidated or unliquidated, and whether due or to become due, which . . . is not referred to in Exhibit 3." On Exhibit 3 the following appears: "NONE."
The court finds that the liability to NYF was not disclosed.
II. As to the Unemployment Compensation Claim of Henry Toepke
At the time of the January 1994 signing of the Asset Purchase Agreement Henry Toepke was the President and a shareholder of Duro. After the sale Duro retained Henry Toepke on a consulting basis. Sometime in April of 1994 after the consultancy ended Henry Toepke applied for unemployment compensation based upon his prior employment at Duro. His application was granted. Duro's financial liability to the State of Connecticut was increased by $7,015.08, based upon an increase in its unemployment rate, due to the payment of Toepke's unemployment compensation. Duro's liability increased further by and additional amount of $3,749.50, due to bond expenses related to this unemployment compensation. Henry Toepke testified that it was only after the closing that he decided to apply for unemployment compensation. Henry Toepke testified further that when he applied for the unemployment compensation he was not aware that Duro would incur unemployment compensation charges to the State of Connecticut, and that he would not have applied had he so known.
The Court finds Henry Teopke's testimony in this regard to be credible, and therefore finds that the unemployment compensation CT Page 13696 claim was not an undisclosed liability.
III. As to Mukon's Claim for Breach of Contract Regarding Diesand Molds
Mukon claims that Duro further breached the Asset Purchase Agreement by misrepresenting that it owned certain dies and molds located on the premises of its vendors at the time of the sale. The dies and molds are used in creating component parts which are used by Duro in assembling the electrode holders. Mukon states that when it asserted ownership, of the dies and molds, the vendors claimed ownership of them. Thus, Mukon maintains that it has loss thousands of dollars in the replacement value of the dies and molds, and in loss business. Duro responds by asserting that in the Asset Purchase Agreement it represented that it either owned, leased or used the dies or molds. Specifically Mukon claims that it merely used these items of personalty. Furthermore, Duro emphasizes that since the preparatory language of Exhibit 6 of the Asset Purchase Agreement refers to the personal property (including the dies and molds) in the sale as ". . . owned, leased or used," there was no representation of ownership of the dies and molds.
The court shall examine the Asset Purchase Agreement to determine whether it definitively resolves the issue as to whether Duro represented that it owned the dies and molds.
In section 2.01 the seller ". . . agrees to sell, transfer, assign, and deliver the Assets and Business to Buyer as of the Closing Date . . . free and clear of all encumbrances and third party interests." The first two sentences of Section 301(f) of the Asset Purchase Agreement are addressed to the non-tangible property which Duro represented that it owns, leases or uses. For clarity the court hereby quotes these sentences.
 Exhibit 6 hereto describes the type, identification and character of all machinery, equipment, furniture, vehicles and other property and interests in personal property owned, leased or used by the seller in the Business. All such property listed on Exhibit 6 will on the Closing Date, be in sufficiently satisfactory operating condition and repair to permit the conduct of the Business. (Emphasis added.)
Section 301 Id.
CT Page 13697
Exhibit 6, entitled "PROPERTY LIST," is the listing of the personal property transferred in the sale. Under the subcategory of "ASSEMBLY ROOM," the following reference to dies and molds, among other items, is made: "various dyes (sic) and molds atvarious locations of our vendors." (Emphasis added.)
Exhibit 13, appended to the Asset Purchase Agreement, also must be considered while determining whether Duro represented that it owned various dies and molds at the time of the sale. Exhibit 13, entitled "PURCHASE PRICE ALLOCATION," includes the following notation:
Furniture, Fixtures and Equipment
Tools and Dies, Molds — $10,000
Inasmuch as there is some ambiguity in the contract as to whether the dies and molds were merely used by Duro, as may be suggested in the language of Exhibit 6, or owned by Duro, as suggested by its valuation of dies and molds in Exhibit 13, extrinsic evidence through the testimony of Henry Toepke is helpful in providing clarity. TIE Communications, Inc. v. Kopp,218 Conn. 281, 291 (1991).
Henry Toepke, who was president of Duro Engineering from 1976 until the date of its sale on January 5, 1994, testified that he was an active chief operating officer for Duro, and that he was responsible for making sure that the electrode holders which Duro sold were created properly. The jaws of the holders are created by stamping metal under pressure using a die. Plastic molds were used in creating component parts. The creation of the component parts through the use of dies and molds was done by outside vendors. Henry Toepke testified further that he was responsible for ordering the outside vendor component parts which Duro then would use in assembling the holders. Henry Toepke also testified that all of the dies and molds used by the outside vendors in creating these component parts were owned by Duro.[1]
Henry Toepke testified further that the phrase "various dyes and molds at various locations of our vendors" on the property list [Exhibit 6] was his handwriting and that it was his intention as President of Duro that those dies and molds be transferred to buyer Mukon as part of the sale the asset of Duro.
The court finds that Duro asserted ownership of the dies and CT Page 13698 molds used on the sites of the outside vendors in creating component parts for its assembly of electrode holders, and that the Asset Purchase Agreement called for the transfer of the dies and molds to Mukon. The court further finds that Duro breached the agreement by not tendering the dies and molds to Mukon.
As to the value of the dies and molds, Henry Toepke testified as a shareholder and owner of Duro that there were three sizes of holders created in part by the dies and molds; namely, 250's, 300's, and 400's. Ample evidence was presented to support a finding that there were two sets of dies for the 250's, and that the cost of replacing each set is $5200.00. Mark Mukon, subject to defendants' objection, offered a written quotation (Exhibit I) from the Ideal Forging Corporation, setting out what it would charge to replace the dies for the 250's, 300's and 400's. The court reserved ruling on the defendants' objection, and hereby sustains the objection on the ground of impermissible hearsay.
The court finds that Mukon has proved the value and cost of replacing only the dies for making the 250 electrode holders.
IV. As to Mukon's Claim of Loss Business
At the trial plaintiff Mukon introduced evidence which it claimed supports its position that it has suffered a loss of a substantial amount of business due to Duro's breaching the agreement by not transferring and delivering the dies. Duro argues a claim of business loss some 52 months after the breach is predicated principally on speculation.
The court finds that Mukon has not proved its claim as to the business which it purportedly loss due to the aforesaid breach of the Asset Purchase Agreement.
V. As to Mukon's Claim of Set Off
The court finds that Mukon is entitled to the following set offs:
A. NVF claim $6,745.72
B. Dies (2 sets of 250's) 10,400.00
Total $17,145.72 CT Page 13699
V. As to Duro's Cause of Action and Claim for Relief
The court finds that after crediting Mukon with set offs in the amount of $17,145.72, Duro is entitled to the amount due under the Installment Note, plus interest.
Clarance J. Jones, Judge